```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

```
ANIRUDH ANIRUDH                   :     CIVIL ACTION
                                  :
     v.                           :
                                  :
BRIAN MCSHANE, et al.             :     NO. 25-6458
```

MEMORANDUM

Bartle, J.                                          December 9, 2025

On November 14, 2025, Anirudh Anirudh filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention at the Philadelphia Federal Detention Center by Immigration and Customs Enforcement ("ICE"). The Respondents are: Brian McShane, the Director of the Philadelphia Field Office of ICE's Enforcement and Removal Operations; Kristi Noem, the Secretary of the Department of Homeland Security; Pamela Bondi, the Attorney General of the United States; Jamal Lawrence, the Warden of the Philadelphia Federal Detention Center; the Department of Homeland Security; and the Executive Office for Immigration Review. All individuals are sued in their official capacities.

Petitioner asks this court to issue a writ of habeas corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days. He also requests that

this court declare that Petitioner is detained under § 1226(a) proceedings and that his mandatory detention is thus unlawful.

I

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). It is a core remedy for unlawful executive detention that is regularly invoked on behalf of noncitizens. Munaf v. Geren, 553 U.S. 674, 693 (2008); St. Cyr, 533 U.S. at 305. When reviewing the legality of executive detention, its protections have been the strongest. St. Cyr, 533 U.S. at 301. Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

II

Petitioner is a citizen of India who initially entered the country in September 2024. He was apprehended by ICE at a

U.S. border in New York during the same month.  The Department of Homeland Security placed him in removal proceedings before the Philadelphia Immigration Court pursuant to 8 U.S.C. § 1229a. Petitioner was charged with being an inadmissible alien under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.  That provision states that an alien present in the United States without being previously admitted or paroled is ineligible to be admitted to the United States. Id.  The documents from the 2024 immigration court proceedings show that he was arrested, detained and released on his own recognizance pursuant to § 1226(a)(2).  Under this statutory provision, "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States . . . . [P]ending such a decision, the [alien] . . . may [be] release[d] . . . on bond . . . or . . . [on] conditional parole."  8 U.S.C. § 1226(a)(2).  An order of recognizance is a form of conditional parole.  Id. § 1226(a)(2)(B); see also Gomes v. Hyde, No. 25-11571, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025).  A condition of his release required him to attend routine check-ins with ICE that would occur at the ICE's Enforcement and Removal Operations office in Philadelphia.

Petitioner has resided in the United States since September 2024.  Up until his recent detention, he lived in Northampton, Pennsylvania with his wife and a close family

-3-

friend.  He has never been arrested for a crime or apprehended by law enforcement apart from his immigration arrest.

Petitioner attended his first check-in with ICE as required on November 6, 2024.  He later filed a timely application for asylum, on or about March 31, 2025.  A court hearing on the application is scheduled for July 20, 2026.

On November 6, 2025, when he attended his second required check-in, he was arrest by ICE officers pursuant to a Department of Homeland Security Form I-200 "Warrant for Arrest of Alien" signed by an immigration officer.  The warrant was directed to "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations."  Section 236 of the Immigration and Nationality Act is codified at 8 U.S.C. § 1226.  Petitioner was first transferred to the Federal Detention Center in Philadelphia and was later transferred to Moshannon Valley Processing Center in Philipsburg, Pennsylvania.  His removal proceedings and asylum application remain pending with the immigration court.  Once in custody, his detention was continued without an opportunity to post bond or be released on other conditions.

ICE took the action it did based on the policy of the Department of Homeland Security issued on July 8, 2025.  The

policy instructed ICE employees to consider anyone charged as inadmissible under § 1182(a)(6)(A)(i), such as Petitioner, to be detained under 8 U.S.C. § 1225(b)(2)(A) and not subject to the provisions of § 1226(a), which permits an alien to be released on bond.  Section 1225(b)(2)(A) provides: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding."  Id. § 1225(b)(2)(A).

On September 5, 2025, the Board of Immigration Appeals adopted the same position as the July 8, 2025 ICE policy by issuing a decision holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission.  Matter of Yajure Hurtado, 29 I&N Dec. 216, 228-29 (BIA 2025).

Petitioner argues that the government has unlawfully determined that he was subject to mandatory detention.  He argues that § 1225(b)(2)(A) does not apply to individuals who were previously detained and released on their own recognizance under § 1226(a) during their initial apprehension by ICE.

III

Respondents first maintain that pursuant to 8 U.S.C. § 1252(g), 8 U.S.C. § 1252(b)(9), and 8 U.S.C. § 1252(a), this

court lacks jurisdiction to hear Petitioner's claims.  This court is guided by two presumptions when analyzing whether a statute bars judicial review of an agency's action.  The first is "the usual strong presumption" in favor of judicial review of administrative action.  E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec., 950 F.3d 177, 184 (3d Cir. 2020) (quoting St. Cyr, 533 U.S. at 298) (internal quotation marks omitted).  The second is the general rule that "the narrower construction of a jurisdiction-stripping provision is favored."  Id. (quoting Alli v. Decker, 650 F.3d 1007, 1013 n.9 (3d Cir. 2011)) (internal quotation marks omitted).

In recent months, numerous district courts have addressed the jurisdictional issues as well as other issues, raised here, including at least six in the Eastern District of Pennsylvania and at least 284 decisions overall.  See, e.g., Ibarra v. Warden of the Fed. Det. Ctr. Phila., No. 25-6312, 2025 WL 3294726, at *2-3 (E.D. Pa. Nov. 25, 2025) (Rufe, J.); Patel v. McShane, No. 25-5975, 2025 WL 3241212, at *2 (E.D. Pa. Nov. 20, 2025) (Brody, J.); Ndiaye v. Jamison, No. 25-6007, 2025 WL 3229307, at *2-3 (E.D. Pa. Nov. 19, 2025) (Sanchez, J.); Demirel v. Fed. Det. Ctr. Phila., No. 25-5488, 2025 WL 3218243, at *2-4 (E.D. Pa. Nov. 18, 2025) (Diamond, J.); Cantu-Cortes v. O'Neill, No. 25-6338, 2025 WL 3171639, at *1 (E.D. Pa. Nov. 13, 2025) (Kenney, J.); Kashranov v. Jamison, No. 25-5555, 2025 WL

3188399, at *3-4 (E.D. Pa. Nov. 14, 2025) (Wolson, J.).  As my colleagues have explained in previous cases, none of these statutes is applicable to the instant Petition.

Section 1252(g), on which Respondents rely to oust this court of jurisdiction, states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien."  8 U.S.C. § 1252(g).  Our Court of Appeals has cautioned this bar "does not sweep broadly."  Tazu v. Att'y Gen. U.S., 975 F.3d 292, 296 (3d Cir. 2020).  The bar "reaches only these three specific actions, not everything that arises out of them."  Id.; see also Ndiaye, 2025 WL 3229307, at *3.  Petitioner simply challenges the lawfulness of his detention.  He does not challenge the commencement or adjudication of an action against him and is not challenging any execution of his removal.  Thus, Section 1252(g) does not oust this court of jurisdiction.

Section 1252(b)(9), which Respondents also cite, provides that legal claims "arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  Section 1252(b)(9) "does not reach claims that are independent

-7-

of, or wholly collateral to, the removal process." E.O.H.C. v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177, 186 (3d Cir. 2020) (internal quotation marks omitted). This provision does not bar this court from reviewing whether a bond hearing is required prior to detention because that issue is collateral to the removal process. Cantu-Cortes, 2025 WL 3171639, at *1.

Finally, Respondents reference Section 1252(a)(2)(B)(ii). It states that "no court shall have jurisdiction to review . . . any . . . decision or action of the Attorney General or Secretary of Homeland Security the authority for which specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). This provision does not bar jurisdiction over this habeas corpus proceeding because Petitioner is not challenging a discretionary decision to deny him bond. Instead, he is challenging the government's legal position that no bond hearing is required. Cantu-Cortes, 2025 WL 3171639, at *1. The meaning of a statute related to detention and the extent of the government's statutory detention power is "not a matter of discretion." Zadvydas, 533 U.S. at 688; see Demore v. Kim, 538 U.S. 510, 516-17 (2003).

Thus, there is no jurisdictional bar to deciding the pending petition for a writ of habeas corpus.

IV

Respondents next assert that if jurisdiction exists, Petitioner is required, and failed, to exhaust his administrative remedies.

Habeas petitioners are "ordinarily required to exhaust their administrative remedies," but they "need not exhaust administrative remedies where the issue presented involves only statutory construction." Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); Vasquez v. Strada, 684 F.3d 431, 433-34 (3d Cir. 2012). The issue presented in the present petition is a purely legal issue of statutory construction: whether an individual in Petitioner's circumstances must be detained pursuant to § 1225(b) or is entitled to a bond hearing under § 1226(a).

Exhaustion is also not required when administrative remedies would be futile. Cantu-Cortes, 2025 WL 3171639, at *1 (citing Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988)). In Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), the Board of Immigration Appeals held that immigration judges lack authority to hear or grant bond requests for aliens present in the United States because they are subject to § 1225(b)(2) proceedings. Id. at 216. Since immigration judges have been directed not to conduct bond hearings for people in Petitioner's position as of September 2025, exhaustion of

administrative remedies before filing this petition would have been futile.

Under these circumstances, Petitioner is not required to exhaust his claims administratively.

V

The court now turns to the merits.  This case concerns two provisions, that is § 1225 and § 1226, of the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.  The critical issue is whether Petitioner's mandatory detention pursuant to § 1225(b)(2)(A) is unlawful.  A noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226.  Demirel, 2025 WL 3218243, at *5; Patel v. Almodovar, No. 25-15345, 2025 WL 3012323, at *2 (D.N.J. Oct. 28, 2025); see also Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 484-85 (S.D.N.Y. 2025).

Section 1225(b)(2)(A) proceedings require mandatory detention while a noncitizen's removal proceedings are pending and the person may be released only "for urgent humanitarian reasons or significant public benefit." Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)).  To trigger § 1225(b)(2)(A), an examining immigration officer must determine that the individual is: (1) an "applicant for admission"; (2) "seeking admission"; and (3) "not clearly and beyond a doubt entitled to be admitted."  See Kashranov v.

-10-

Jamison, No. 25-5555, 2025 WL 3188399, at *6 (E.D. Pa. Nov. 14, 2025) (Wolson, J.).  For the reasons well stated by Judge Wolson, these are separate requirements, all of which must be met for Section 1225(b)(2)(A) to apply.  Id. at *6-7.  The court rejects the opinion of the Board of Immigration Appeals in Hurtado, on which Respondents rely, which conflate "applicant for admission" and "seek admission."  Matter of Yajure Hurtado, 29 I&N Dec. 216, 222-24 (BIA 2025); see Loper Bright Enters. v. Raimondo, 603 U.S. 369, 400-01 (2024)).  To agree with that interpretation would disregard the plain meaning of Section 1225(b)(2)(A) and violate the rule against surplusage of statutory language.  See Kashranov, 2025 WL 3188399, at *6-7.  "Applicant for admission" and "seeking admission," as noted above, are two statutorily distinct requirements.

The Act defines "admission" as "lawful entry . . . into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A).  As more fully stated by other members of this court, the phrase "seeking admission" limits the application of § 1225(b)(2)(A) to noncitizens who are just arriving or have recently arrived in the country.  See Ndiaye, 2025 WL 3229307, at *4-8; Demirel, 2025 WL 3218243, at *4-5; Kashranov, 2025 WL 3188399, at *4-7; Cantu-Cortes, 2025 WL 3171639, at *1-2.  Noncitizens who have resided in the country for longer periods do not "seek

admission" because they do not seek lawful entry.  See Ibarra, 2025 WL 3294726, at *5.  They have already entered the country without seeking admission.

A pending application for asylum may make a noncitizen like Petitioner an applicant for admission.  Even assuming that Petitioner is an applicant for admission, Section 1225(b)(2)(A) does not apply to him because he does not meet the separate § 1225(b)(2)(A) requirement of "seeking admission."  He was released by the Department of Homeland Security on his own recognizance in September 2024.  At the time of his arrest in November 2025, he had been present in this country for over a year and was not at that point "seeking admission," that is seeking lawful entry, to the United States.  See 8 U.S.C. § 1101(a)(13)(A); see also Valencia Zapata v. Kaiser, No. 25-7492, 2025 WL 2741654, at *10 (N.D. Cal. Sept. 26, 2025).  Instead of seeking a "lawful entry to the United States," an asylum applicant currently living in the country, like Petitioner, is seeking a lawful means to remain here.  See Lopez Benitez, 795 F. Supp. at 489.  By its plain text, § 1225(b)(2)(A) does not apply to him.

In contrast, Section 1226 authorizes the government to detain aliens already in the country pending the outcome of removal proceedings.  Jennings, 583 U.S. at 289.  Section 1226(a), as noted above and in contrast to Section 1225,

establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a); see also Gomes, 2025 WL 1869299, at *2. Individuals who are detained under § 1226 are generally entitled to a bond hearing at the outset of their detention. 8 C.F.R. §§ 1003.19(a), 1236.1(d). Noncitizens who have been arrested, charged with, or convicted of a crime are subject to mandatory detention. See 8 U.S.C. § 1226(c). Petitioner does not fit into this latter category.

Respondents have consistently treated Petitioner under § 1226 since he arrived in the United States, even if they now make a 180 degree turn and maintain he is subject to § 1225(b)(2)(A). Petitioner entered without inspection in September 2024. He was charged under § 1182(a)(6)(A)(i) with being an inadmissible alien in that month. He was arrested, detained and released on his own recognizance, and thus conditionally paroled into the United States, pursuant to Section 1226(a)(2). Significantly, his detention in November 2025 was on the authority of an arrest warrant pursuant to "section 236 . . . of the Immigration and Nationality Act," that is, § 1226. The warrant made no reference to § 1225(b)(2)(A).

Accordingly, Petitioner is an alien who was released on recognizance and at that time residing in the United States. He does not meet all the statutory criteria of Section

1225(b)(2)(A) so as to be subject to mandatory detention as has occurred here.  Thus, this court joins the many district courts around the country, as discussed previously, that have rejected the Respondents' position that Section 1225(b)(2) permits them to pursue mandatory detention against him.  See Lopez v. Noem, No. 25-16890, 2025 WL 3101889, at *3 (D.N.J. Nov. 5, 2025) (collecting cases).

Petitioner is properly subject to the § 1226 proceedings and is entitled to a bond hearing before an immigration judge.  Since his mandatory detention violates federal law, the court need not address his claims that either the bond regulations or due process has been violated.

VI

The court will issue a writ of habeas corpus requiring that Respondents release Petitioner because his mandatory detention violates the Immigration and Nationality Act.  The court also declares his current detention unlawful.